**GIANNI CEREDA FABRICS, INC.,**
**Plaintiff,**

v.

**BAZAAR FABRICS, INC., Defendant.**

**No. 71 Civ. 1361.**

United States District Court,
S. D. New York.

May 19, 1971.

Ruben Schwartz, New York City, for plaintiff.

David Targ, New York City, for defendant.

MOTLEY, District Judge.

*Findings of Fact and Conclusions*
*of Law*

This is an application brought by Gianni Cereda Fabrics, Inc., plaintiff herein, for a preliminary injunction against defendant, Bazaar Fabrics, Inc., enjoining defendant, pending final determination of this action, from manufacturing, converting, selling, or distributing textiles bearing a reproduction of a work of art known as "Cats in the Grass, No. 91089."

The underlying complaint charges defendant with copyright infringement and unfair competition arising under the Copyright Laws of the United States. (17 U.S.C. §§ 1–32). Jurisdiction is vested in the court pursuant to 28 U.S.C. § 1338.

Plaintiff is a business engaged in the development, design, manufacture, conversion and sale of textiles. But unlike some other textile manufacturers who produce staple lines of goods which may be carried over from year to year, plaintiff is a "style leader" converter operation which means, in the textile industry, that plaintiff originates new designs yearly. Plaintiff employs a staff of artists and designers to create the new designs which are then imprinted upon griege goods purchased from outside mills where they were manufactured to specification. According to plaintiff, of the many styles and colors produced each year, only a few are usually markedly successful and with profits garnered from their sales, the cost of designing all the lines is borne. (The profit producing life of any design is stated to be brief.) So was the case with the design, "Cats In The Grass, No. 91089," the subject of the instant controversy. The complaint states that the design was first published on March 1, 1970, and that prior thereto plaintiff had commenced to convert griege goods into printed textiles bearing the design, and to advertise, offer for sale and sell such material to manufacturers of women's dresses, sportswear, curtains, draperies, etc. The complaint also recites that at all times since March 1, 1970, all copies of plaintiff's design produced by plaintiff or made under its authority and license, have been painted, reproduced, printed and published in strict conformity with the copyright laws. On April 9, 1970, plaintiff received a Certificate of Registration of a Claim to Copyright designated, "Class H, Registration No. H 43125." The complaint then goes on to allege that defendant has been publishing plaintiff's design since on or before August, 1970.

Defendant defends its actions by answering that it obtained permission to use a facsimile of the design in question from Salem Mills of New Jersey in June, 1970, and that at that time, defendant was totally unaware of any existing copyright. As a matter of fact, defendant claims that it was told by Salem Mills that the design had been submitted to the Design Registration Bureau of the Textile Distributors Association on April 1, 1970, and that it had been cleared by the Bureau. The Bureau, defendant explains, exists for the sole purpose of permitting converters to register their designs in a central file so that other converters may discover whether prior claims to a design exist before going to the expense of printing it on fabric. Plaintiff's lawyer wrote to defendant on August 18, 1970 asserting that defendant was infringing upon plaintiff's design but did not state in the letter the copyright number or the date it was obtained. Defendant's lawyer wrote back to him requesting that information shortly thereafter. No answer to defendant's letter was ever forthcoming. Rather, he was served some 7½ months later (April 12, 1970) with notice of the instant action.

There is no dispute between the parties that the design was originated by plaintiff. Nor is there any dispute that defendant has marketed fabrics bearing a facsimile of the design in question without obtaining plaintiff's permission. There are only three contentions urged by defendant by way of opposition to the application. First, it is argued that plaintiff forfeited any copyright protection it might have had by selling its fabric without the notice required by 17 U.S.C. § 10. Secondly, it is said that plaintiff has not sustained its burden of demonstrating its probable success on trial, making the granting of a preliminary injunction improper. And, thirdly, defendant urges upon the court that plaintiff's dilatory conduct in seeking relief from the alleged infringements is a ground for denying the preliminary injunction.

■ "It is well settled in this circuit that in copyright infringement cases a preliminary injunction should issue when the plaintiff has made out a prima facie case of copyright infringement, even without his having made a detailed showing of the danger of irreparable harm." Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 296 F.Supp. 736, 737 (S.D.N.Y.1969); American Metropolitan Enterprises of New York, Inc. v. Warner Brothers Records, Inc., 389 F.2d 903, 905 (2d Cir. 1968). See Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F. 2d 851, 852 n. 1 (2d Cir. 1967); Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144 (2d Cir. 1956); Rushton Co. v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955). This rule, however, does not "dispense with or mitigate plaintiff's burden of showing that he has a reasonable probability of success on the merits when the matter is finally adjudicated." Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., supra, 296 F.Supp. at 737. Klauber Bros., Inc. v. Lady Marlene Brassiere Corp., 285 F.Supp. 806 (S.D.N.Y.1968). And the rule does not mandate that a court neglect its duty to consider the *need* for the issuance of an injunction, in nature an extraordinary remedy, before issuing it. See Irving J. Dorfman Co. v. Borlan Industries, Inc., 309 F.Supp. 21, 25 (S.D.N.Y.1969) and the cases enumerated therein.

This court, having reviewed the evidence by affidavit before it, and based upon the oral argument it has entertained, has determined, in the exercise of its discretion, that the injunction should not issue. The application is, therefore, denied.

■ 1. The court finds that the equities lie against plaintiff because of the delay in instituting the suit and bringing on the motion. Delays in seeking preliminary injunctions have been held grounds for barring that relief. For as Judge Bryan has stated in the Gillette Company v. Ed Pinaud, Inc., 178 F. Supp. 618, 622 (S.D.N.Y.1959) case:

" . . . while laches may not be sufficient to bar a permanent injunction it may well be a bar to preliminary relief. A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues. . . ."

See also, Klauber Brothers Inc. v. Lady Marlene Brassiere Corp., *supra*; Thomas Wilson & Co. v. Irving J. Dorfman, 268 F.Supp. 711 (S.D.N.Y.1967); Helena Rubinstein, Inc. v. Frances Denney, Inc., 286 F.Supp. 132 (S.D.N.Y.1968); Irving J. Dorfman Co. v. Borlan Industries, Inc., *supra*; American Fabrics Co. v. Lace Art, Inc., 291 F.Supp. 589 (S.D. N.Y.1968).

As was stated previously, plaintiff knew of the alleged infringement at least some seven and one-half months prior to the filing of this action, yet took no steps to obtain relief. As a matter of fact, according to defendant, plaintiff did not even see fit to reply to defendant's letter requesting the particulars regarding the copyright plaintiff had represented that it had on the design. Had plaintiff responded, it may be that defendant would have desisted from its alleged course of infringing activities. As it is, plaintiff's failure to act sooner really places plaintiff in the position of having by its inaction compounded any alleged infringements.

Plaintiff's claimed need for immediate relief is undercut by the slow pace with which plaintiff has sought to obtain it. Plaintiff's dilatoriness is unexplained, and is, indeed inexplicable in view of its arguments regarding the short life of designs and the consequent urgent need for relief. It would seem to this court the plaintiff's argument that a design's life is brief cuts both ways. "To begin with, it accentuates the inordinate time

plaintiff took to seek the temporary injunction. It also makes clear that such an injunction would amount in substance to the ultimate relief sought in the action—a further factor weighing against the granting of this extraordinary remedy. See, e. g., Foundry Services, Inc. v. Beneflux Corporation, 206 F.2d 214, 216 (2d Cir. 1953); Blaich v. National Football League, 212 F.Supp. 319, 320 (S.D.N.Y.1962)." Thomas Wilson & Co. v. Irving J. Dorfman, *supra,* 268 F.Supp. at 714.

2. Plaintiff's claims as regards its "irreparable" injury are that plaintiff is losing sales, profits, and goodwill and that the originality of the design is coming to an end. Plaintiff claims that it will be impossible to ascertain monetary damages which the alleged infringement will cause if not enjoined. But if the injury and loss is as serious as that this court is hard put to understand why plaintiff delayed seven and one-half months before the bringing of this suit. It seems to this court, however, that such damages would not be impossible to compute, and if defendant is found liable after a trial upon the merits, monetary damages would be an adequate remedy. See American Fabrics Co. v. Lace Art, Inc., *supra,* 291 F.Supp. at 592.

■ 3. The court notes that plaintiff and defendant disagree over whether the designed material sold by plaintiff bore the appropriate trademark notice. Plaintiff asserts in its papers, to recapitulate, that at all times since March 1, 1970, all copies of the design which have been marketed by plaintiff have had a selvage bearing notice of the copyright. Plaintiff produced upon the argument a swatch of cloth clearly bearing such notice and represented that some 143,000 yards of material bearing similar notice have been sold. Thus, plaintiff contends, there has been no dedication of the design to the public do-

main because of inadequate marking. Defendant, on the other hand, in an effort to show otherwise, and to prove that the design has been distributed by plaintiff without notice, produced upon the argument some 4 yards of material allegedly produced by plaintiff printed with what purported to be the design with no such notice. In fact, defendant questions whether plaintiff obtained its copyright in April, 1970, as plaintiff claims. If it did, defendant asks, why did plaintiff not cite such information in response to defendant's August letter? The court notes that the copy of the certificate of registration produced before the court bears no date. Defendant alleges that as late as December, 1970, the copyright office was assigning copyright numbers in the range which plaintiff alleges its copyright number is. While this latter small quantity of fabric which defendant has presented to the court is not a sufficient basis in and of itself from which the court could find that plaintiff's design had been published without notice, still it does raise an important factual question which must be heard and resolved. "Where sharp issues of fact are presented it is apparent that the case is not a fit one for preliminary relief and the resolution of the disputed issues must await trial." Heyman v. Ar. Winarick, Inc., 166 F.Supp. 880, 883 (S.D.N.Y.1958). See Helena Rubinstein, Inc. v. Frances Denney, Inc., *supra,* 286 F.Supp. at 134.

■ Because of plaintiff's lack of diligence in seeking relief promptly, because of the adequacy of monetary damages in the event plaintiff's claim is sustained, and because of the open questions of fact and law surrounding the notice of copyright, the court, in the exercise of its discretion, finds that the motion for a preliminary injunction should be denied.

So ordered.